IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| SPOKANE COUNTY, a political subdivision of the State of Washington, Appellant, | ) ) ) ) | No. 30725-5-III |
| v. | ) ) ) | |
| EASTERN WASHINGTON GROWTH MANAGEMENT HEARINGS BOARD, a statutory entity, and KASI HARVEY-JARVIS, DAN HENDERSON, LARRY KUNZ, McGLADES, INC., NEIL MEMBREY, and NEIGHBORHOOD ALLIANCE OF SPOKANE, Respondents. | ) ) ) ) ) ) ) ) ) ) ) ) ) | PUBLISHED OPINION |

BROWN, J. — Spokane County appeals for the second time an Eastern Washington Growth Management Hearings Board decision that invalidated the County's planning actions in amendment 07-CPA-05. *See Spokane County v. E. Wash. Growth Mgmt. Hr'gs Bd. (Spokane County I)*, 160 Wn. App. 274, 250 P.3d 1050, *review denied*, 171 Wn.2d 1034 (2011) (holding the hearings board had subject matter jurisdiction to review amendment 07-CPA-05). The hearings board decided the County had failed to comply with the Growth Management Act (GMA), chapter 36.70A RCW, and the State

Environmental Policy Act (SEPA), chapter 43.21C RCW, when it adopted amendment 07-CPA-05. The superior court affirmed on remand from *Spokane County* I.

Although *Spokane County* I explained the hearings board's jurisdiction extended to both the comprehensive plan amendment and the concurrent rezone, the County asserts the hearings board lacks jurisdiction over the rezone. Specifically, the County contends the hearings board lacked authority to review the rezone because it is a site-specific land use decision within the superior court's exclusive jurisdiction under the Land Use Petition Act (LUPA), chapter 36.70C RCW. We again reject this contention because the rezone was not authorized by the then-existing comprehensive plan, but rather implements the comprehensive plan amendment, over which the hearings board had jurisdiction. Additionally, we reject the County's contentions that the hearings board's decision fails to accord proper deference, lacks substantial evidence, erroneously interprets and applies the law, and is arbitrary and capricious. Accordingly, we affirm.

## FACTS

In December 2004, McGlades LLC purchased a 4.2 acre land parcel in Spokane County, on which the prior owners had operated a produce store that did not conform to the property's Urban Reserve zone designation. In June 2005, McGlades obtained building and restaurant permits, and expanded its nonconforming use into a market and bistro. McGlades soon applied unsuccessfully for a conditional use permit, requesting further expansion to include an asphalt driveway and drive-through espresso service, asphalt parking lot with spaces for 39 vehicles, outdoor dining and entertainment with

2

seating for 64 patrons, and on-site alcohol consumption. McGlades then proposed amendments to the County's comprehensive plan map and zoning map that would change the property's comprehensive plan category and zone designation to Limited Development Area (Commercial). In July 2006, while the County contemplated the proposal, McGlades obtained a temporary use permit and presumably began expansion. But McGlades soon closed its business when the temporary use permit expired in January 2007. McGlades does not participate in this second appeal. The facts are unchanged from *Spokane County* I, 160 Wn. App. at 278-80.

In September 2007, the County issued a SEPA environmental checklist and corresponding determination of nonsignificance for McGlades's proposal and seven others. The County concluded SEPA did not require environmental impact statements because the proposals presented "no probable significant adverse impacts." Administrative Record (AR) at 59, 63. Specifically, the County characterized the proposals as nonproject actions, leaving much of the required environmental analysis "[t]o be determined if site specific developments are proposed." AR at 43. Neighboring landowners Dan Henderson, Larry Kunz, and Neil Membrey unsuccessfully appealed the County's threshold determination to the County Hearing Examiner.

On December 21, 2007, the Board of County Commissioners passed Resolution 07-1096, adopting McGlades's proposal along with seven others during the annual comprehensive plan amendment cycle. The resolution incorporated McGlades's proposal as amendment 07-CPA-05. Neighboring landowners Kasi Harvey-Jarvis, Dan Henderson, Larry Kunz, and Neil Membrey, along with the Neighborhood Alliance of

3

Spokane (collectively the Neighbors), successfully appealed the resolution to the hearings board. The hearings board decided (1) amendment 07-CPA-05 designated a new Limited Area of More Intensive Rural Development (LAMIRD) without observing applicable GMA requirements, (2) the environmental checklist was inadequate under SEPA because it did not fully disclose or carefully consider amendment 07-CPA-05's probable long-term effects, and (3) amendment 07-CPA-05 is invalid because its continued validity would substantially interfere with fulfilling the GMA's goals of promoting urban growth, reducing sprawl, and protecting the environment.

The superior court reversed the hearings board's decision upon the County's appeal and this court reversed the superior court's decision upon the Neighbors' appeal. *Spokane County* I, 160 Wn. App. 274. On remand, the superior court affirmed the hearings board's decision. The County again appealed to this court.

## REVIEW STANDARD

We review a hearings board decision under the Administrative Procedure Act (APA), chapter 34.05 RCW. *Feil v. E. Wash. Growth Mgmt. Hr'gs Bd.*, 172 Wn.2d 367, 376, 259 P.3d 227 (2011); *see* RCW 34.05.510. We apply APA standards directly to the hearings board record, performing the same function as the superior court. *City of Redmond v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 136 Wn.2d 38, 45, 959 P.2d 1091 (1998); *see* RCW 34.05.526. The party challenging the hearings board decision (here the County) bears the burden of proving it is invalid. RCW 34.05.570(1)(a). The decision is invalid if it suffers from at least one of nine enumerated infirmities. RCW 34.05.570(3). We must grant relief from the decision if, as relevant here:

4

(b)  The order is outside the statutory authority or jurisdiction of the agency conferred by any provision of law;
(c)  The agency has engaged in unlawful procedure or decision-making process, or has failed to follow a prescribed procedure;
(d)  The agency has erroneously interpreted or applied the law;
(e)  The order is not supported by evidence that is substantial when viewed in light of the whole record . . . ; [or]

. . . .

(i)  The order is arbitrary or capricious.

RCW 34.05.570(3)(b)-(e), (i).

Our review is de novo under RCW 34.05.570(3)(b) through (d), determining whether the decision contains a legal error. *Kittitas County v. E. Wash. Growth Mgmt. Hr'gs Bd.*, 172 Wn.2d 144, 155, 256 P.3d 1193 (2011). We accord a hearings board's interpretation of the GMA "substantial weight." *King County v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 142 Wn.2d 543, 553, 14 P.3d 133 (2000). But the interpretation does not bind us. *City of Redmond*, 136 Wn.2d at 46.

We apply the substantial evidence review standard to challenges under RCW 34.05.570(3)(e), determining whether there exists "'a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order.'" *City of Redmond*, 136 Wn.2d at 46 (quoting *Callecod v. Wash. State Patrol*, 84 Wn. App. 663, 673, 929 P.2d 510 (1997)). We view the evidence "in the light most favorable to . . . 'the party who prevailed in the highest forum that exercised fact-finding authority.'" *City of Univ. Place v. McGuire*, 144 Wn.2d 640, 652, 30 P.3d 453 (2001) (quoting *State ex rel. Lige & Wm. B. Dickson Co. v. County of Pierce*, 65 Wn. App. 614, 618, 829 P.2d 217 (1992)). Doing so "'necessarily entails accept[ing] the factfinder's views regarding the

5

credibility of witnesses and the weight to be given reasonable but competing inferences.'" *Id.* (quoting *Lige & Wm. B. Dickson Co.*, 65 Wn. App. at 618).

We apply the arbitrary and capricious review standard to challenges under RCW 34.05.570(3)(i), determining whether the decision constitutes "'willful and unreasoning action, taken without regard to or consideration of the facts and circumstances surrounding the action.'" *City of Redmond*, 136 Wn.2d at 46-47 (quoting *Kendall v. Douglas, Grant, Lincoln & Okanogan Counties Pub. Hosp. Dist. No. 6*, 118 Wn.2d 1, 14, 820 P.2d 497 (1991)). "'Where there is room for two opinions, an action taken after due consideration is not arbitrary and capricious even though a reviewing court may believe it to be erroneous.'" *Id.* at 47 (quoting *Kendall*, 118 Wn.2d at 14).

## ANALYSIS

### A. Law of the Case

The Neighbors argue *Spokane County* I precludes the County's contention that the hearings board lacked subject matter jurisdiction over the rezone. The County responds *Spokane County* I solely decided the hearings board had jurisdiction over the comprehensive plan amendment. We agree with the Neighbors but, as explained below, we choose to clarify the principles we established in *Spokane County* I.

"The law of the case doctrine provides that once there is an appellate court ruling, its holding must be followed in all of the subsequent stages of the same litigation." *State v. Schwab*, 163 Wn.2d 664, 672, 185 P.3d 1151 (2008) (citing *Roberson v. Perez*, 156 Wn.2d 33, 41, 123 P.3d 844 (2005)). Thus, "'questions determined on appeal, or which might have been determined had they been presented,

6

will not again be considered on a subsequent appeal if there is no substantial change in the evidence.'" *Folsom v. County of Spokane*, 111 Wn.2d 256, 263, 759 P.2d 1196 (1988) (quoting *Adamson v. Traylor*, 66 Wn.2d 338, 339, 402 P.2d 499 (1965)). We retain discretion on whether to apply the doctrine:

> The appellate court may at the instance of a party review the propriety of an earlier decision of the appellate court in the same case and, where justice would best be served, decide the case on the basis of the appellate court's opinion of the law at the time of the later review.

RAP 2.5(c)(2).

In *Spokane County* I, the superior court ruled the hearings board lacked jurisdiction to review the comprehensive plan amendment and concurrent rezone because they together constituted a site-specific land use decision within the superior court's exclusive jurisdiction under LUPA. 160 Wn. App. at 280. The Neighbors sought this court's relief, contending "the change here, site specific or not, amounted to an amendment of the County's comprehensive plan and therefore review was properly with the Hearings Board" under the GMA. *Id.* McGlades responded "this was a site-specific rezone over which the Hearings Board had no jurisdiction." *Id.* The County deferred to McGlades's argument on this issue. Resp't Spokane County's Resp. Br. at 5, *Spokane County* I, 160 Wn. App. 274 (No. 28350-0-III). We reversed the superior court and affirmed the hearings board, reasoning:

> Growth management hearings boards have exclusive authority to rule on challenges alleging that a governmental agency is not in compliance with the requirements of the GMA. The hearings boards have jurisdiction to review petitions challenging whether a county's comprehensive plan, development regulations, and permanent amendments to the plan comply with the GMA. A hearings board does "not have jurisdiction to decide

7

challenges to site-specific land use decisions because site-specific land use decisions do not qualify as comprehensive plans or development regulations."

*Site-specific rezones authorized by an existing comprehensive plan are treated differently from amendments to comprehensive plans or development regulations.* [LUPA] governs site-specific land use decisions and the superior court has exclusive jurisdiction over petitions that challenge site-specific land use decisions. However, "[t]he superior court may decide only whether a site-specific land use decision complies with a comprehensive plan and/or development regulation," *not whether the rezone complies with the GMA.* LUPA does not apply to local land use decisions "that are subject to review by a quasi-judicial body created by state law, such as . . . the growth management hearings board."

. . . .

The GMA does not make a distinction between site-specific and general comprehensive plan map amendments. Nor does the GMA recognize a single reclassification approach of "site specific Comprehensive Plan Maps," urged by McGlades. The Hearings Board had jurisdiction to review the petition.

. . . .

We . . . reverse the decision of the superior court ruling that the Eastern Washington Growth Management Hearings Board did not have jurisdiction over the comprehensive plan amendment.

*Id.* at 280-81, 283, 286 (second alteration and first omission in original) (emphasis added) (citations omitted).

In sum, *Spokane County* I held the hearings board had GMA authority to consider the Neighbors' petition. Because the Neighbors' petition alleged "Spokane County unlawfully amend[ed] the Spokane County Comprehensive Plan *and County Zoning map*," AR at 1 (emphasis added), the *Spokane County* I court explained the hearings board had subject matter jurisdiction to review both the comprehensive plan amendment and concurrent rezone under the GMA, thereby rejecting McGlades's site-specific rezone arguments. Contrary to law of the case principles, the County again contends, as did McGlades in *Spokane County* I, that the hearings board lacked

8

jurisdiction to review the rezone because it is a site-specific land use decision within the superior court's exclusive jurisdiction under LUPA. Even so, we exercise our discretion to further clarify the rule we established in *Spokane County* I.

## B. Jurisdiction

The issue is whether the hearings board had subject matter jurisdiction to review amendment 07-CPA-05's rezone under the GMA. The County contends the rezone is within the superior court's exclusive jurisdiction under LUPA. We review the hearings board's assertion of jurisdiction de novo. RCW 34.05.570(3)(b); *Kittitas County*, 172 Wn.2d at 155.

Certain local governments like Spokane County must "adopt a comprehensive plan under [the GMA] and development regulations that are consistent with and implement the comprehensive plan." RCW 36.70A.040(3)(d), (4)(d), (5)(d). If a county amends its comprehensive plan, it must concurrently adopt or amend consistent implementing development regulations. WAC 365-196-805(1). A comprehensive plan is a county's "generalized coordinated land use policy statement." RCW 36.70A.030(4). Development regulations are a county's "controls placed on development or land use activities . . . , including . . . zoning ordinances." RCW 36.70A.030(7). But a "decision to approve a project permit application" is not a development regulation, even if it appears in a legislative resolution or ordinance. *Id.* Instead, a project permit approval is a "land use decision" under LUPA. RCW 36.70C.020(2)(a). Project permit applications include proposals for "site-specific rezones authorized by a comprehensive plan" but

9

exclude proposals for "the adoption or amendment of a comprehensive plan . . . or development regulations." RCW 36.70B.020(4).

Regional hearings boards have exclusive jurisdiction to review petitions alleging a county did not comply with the GMA in adopting or amending its comprehensive plan or development regulations.[1] Former RCW 36.70A.280(1)(a) (2003); former RCW 36.70A.290(2) (1995); *Somers v. Snohomish County*, 105 Wn. App. 937, 945, 21 P.3d 1165 (2001). Additionally, hearings boards may review petitions alleging a county did not comply with SEPA in adopting or amending its comprehensive plan or development regulations. Former RCW 36.70A.280(1)(a), .290(2). But hearings boards "do not have jurisdiction to decide challenges to site-specific land use decisions because [those] decisions do not qualify as comprehensive plans or development regulations." *Woods v. Kittitas County*, 162 Wn.2d 597, 610, 174 P.3d 25 (2007); *see* RCW 36.70A.030(4), (7); RCW 36.70B.020(4); RCW 36.70C.020(2)(a). Instead, the superior court has exclusive jurisdiction under LUPA to review site-specific land use decisions not subject to review by quasi-judicial agencies like hearings boards. Former RCW 36.70C.030(1)(a)(ii) (2003); *Woods*, 162 Wn.2d at 610.

Here, whether the hearings board had subject matter jurisdiction to review amendment 07-CPA-05's rezone depends on whether it is an amendment to a development regulation under the GMA or a project permit approval under LUPA. *Woods*, 162 Wn.2d at 610; *see* RCW 36.70A.030(7); RCW 36.70B.020(4). The rezone

---

[1] The Eastern Washington Growth Management Hearings Board has jurisdiction over such petitions arising from counties "east of the crest of the Cascade Mountains," including Spokane County. Former RCW 36.70A.250(1)(a) (1994).

was certainly site specific. *See Woods*, 162 Wn.2d at 611 n.7 (stating a site-specific rezone is a change in the zone designation of a "'specific tract'" at the request of "'specific parties'" (quoting *Cathcart-Maltby-Clearview Cmty. Council v. Snohomish County*, 96 Wn.2d 201, 212, 634 P.2d 853 (1981))). But the parties dispute whether the rezone was or needed to be "authorized by a comprehensive plan." RCW 36.70B.020(4).[2]

Under RCW 36.70B.020(4), a site-specific rezone is a project permit approval solely if "authorized by a comprehensive plan"; otherwise, it is "the adoption or amendment of a . . . development regulation[]." We must interpret this language so as to give it meaning, significance, and effect. *See In re Parentage of J.M.K.*, 155 Wn.2d 374, 393, 119 P.3d 840 (2005) (stating a court must not "simply ignore" express terms when interpreting a statute); *State ex rel. Baisden v. Preston*, 151 Wash. 175, 177, 275 P. 81 (1929) (stating a court must interpret a statute as a whole so that, if possible, "'no clause, sentence, or word shall be superfluous, void, or insignificant'" (quoting *Wash. Mkt. Co. v. Hoffman*, 101 U.S. 112, 115-16, 25 L. Ed. 782 (1879))); *Murray v. Dep't of Labor & Indus.*, 151 Wash. 95, 102, 275 P. 66 (1929) (a court must, if possible, interpret a statute so as to give every word or phrase "meaning" as well as "significance and effect" (internal quotation marks omitted)). As we noted in *Spokane County* I, to be "authorized by a comprehensive plan" within the meaning of RCW 36.70B.020(4), the rezone had to be "allowed by an *existing* comprehensive plan." 160 Wn. App. at 281-83

---

[2] We address the same dispute in a similar case with consistent reasoning. *See Kittitas County v. Kittitas County Conservation Coal.*, No. 30728-0-III (Wash. Ct. App. Aug. 13, 2013).

(emphasis added); *see also Woods*, 162 Wn.2d at 612 n.7, 613; *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 179-80, 4 P.3d 123 (2000).

The County argues it initially sought a site-specific rezone of McGlades's property but, under local zoning codes, the rezone was not possible without changing the property's existing comprehensive plan category from Urban Reserve to Limited Development Area (Commercial). The County explains it made the necessary change by amending the comprehensive plan and concurrently rezoning the property. Nonetheless, the County contends the rezone was "separate and distinct" from the comprehensive plan amendment. Appellant Spokane County's Opening Br. at 11. We disagree. Notably, the County concedes the rezone required a comprehensive plan amendment to take effect. This inexorably intertwined the rezone and the comprehensive plan amendment, making them interdependent and putting them in the same basket for hearings board review. In other words, the rezone was premised on and carried out the comprehensive plan amendment. Therefore, the rezone is not a project permit approval under LUPA because the then-existing comprehensive plan did not authorize it. Instead the rezone is an amendment to a development regulation under the GMA because it implements the comprehensive plan amendment. Thus, the hearings board's decision is within its statutory authority. *See* RCW 34.05.570(3)(b).

Dictum in *Coffey v. City of Walla Walla*, 145 Wn. App. 435, 187 P.3d 272 (2008), does not require a different conclusion. There, the city amended its comprehensive plan but did not rezone the property. *Id.* at 438. The *Coffey* court held the superior court lacked subject matter jurisdiction to review the comprehensive plan amendment

12

under LUPA because the hearings board had exclusive jurisdiction to do so under the

GMA. *Id.* at 441. The *Coffey* court continued,

> It is not uncommon for those hoping to develop property to seek both a comprehensive plan amendment and a rezone of property in the same proceeding. Anyone seeking to challenge both aspects of a ruling granting both requests would by statute have to appeal to two entities: the [hearings board] for the comprehensive plan amendment and superior court for the rezone.

*Id.* at 442. This statement was unnecessary to the *Coffey* court's holding because the

city amended its comprehensive plan but did not rezone the property. Additionally, this

statement is true solely if a rezone is site specific and authorized by a then-existing

comprehensive plan. In making this statement, the *Coffey* court did not consider

whether a rezone that implements a comprehensive plan amendment can be an

amendment to a development regulation.

Considering all, we hold a site-specific rezone is a project permit approval under

LUPA if it is authorized by a then-existing comprehensive plan and, by contrast, is an

amendment to a development regulation under the GMA if it implements a

comprehensive plan amendment. In sum, the hearings board had subject matter

jurisdiction to review amendment 07-CPA-05's rezone for compliance with both the

GMA and SEPA. *See* former RCW 36.70A.280(1)(a), .290(2).

## C. Hearings Board Decisions

The issue is whether the hearings board erred by invalidating amendment 07-

CPA-05 on grounds the County did not comply with the GMA or SEPA in adopting it.

We review the hearings board's factual findings for substantial evidence, legal

13

conclusions de novo, and order for arbitrariness or capriciousness. RCW 34.05.570(3)(d)-(e), (i); *Kittitas County*, 172 Wn.2d at 155; *City of Redmond*, 136 Wn.2d at 46-47.

A hearings board may decide a petition alleging a county did not comply with the GMA or SEPA in adopting or amending its comprehensive plan or development regulations. Former RCW 36.70A.280(1)(a), .290(2). The petitioner (here the Neighbors) bears the burden of proving noncompliance. RCW 36.70A.320(2). But a county has "broad discretion in adapting the requirements of the GMA to local realities." *Quadrant Corp. v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 154 Wn.2d 224, 236, 110 P.3d 1132 (2005); *see* former RCW 37.70A.320(1) (1997). Thus, a hearings board must presume validity and find compliance unless the county's planning action is "clearly erroneous in view of the entire record before the board and in light of the goals and requirements of [the GMA]." RCW 36.70A.320(1), (3). A county's planning action is clearly erroneous if it leaves a hearings board with a "'firm and definite conviction that a mistake has been committed.'" *King County*, 142 Wn.2d at 552 (quoting *Dep't of Ecology v. Pub. Util. Dist. No. 1*, 121 Wn.2d 179, 201, 849 P.2d 646 (1993)).

Where a hearings board finds noncompliance with the GMA or SEPA, it may wholly or partially invalidate the county's planning action if "continued validity . . . would substantially interfere with the fulfillment of the goals of [the GMA]." Former RCW 36.70A.302(1) (1997). The GMA's goals include, as relevant here:

> (1) Urban growth. Encourage development in urban areas where adequate public facilities and services exist or can be provided in an efficient manner.

14

(2) Reduce sprawl. Reduce the inappropriate conversion of undeveloped land into sprawling, low-density development.

. . . .

(10) Environment. Protect the environment and enhance the state's high quality of life, including air and water quality, and the availability of water. . . .

RCW 36.70A.020(1)-(2), (10). On appropriate facts, SEPA noncompliance may substantially interfere with fulfilling the GMA's environmental protection goal. *Davidson Serles & Assocs. v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 159 Wn. App. 148, 158, 244 P.3d 1003 (2010); *see* WASH. STATE DEP'T OF ECOLOGY, STATE ENVIRONMENTAL POLICY ACT HANDBOOK § 7, at 75 (1998 & Supp. 2003).

We begin with GMA noncompliance. The County challenges the hearings board's decision that amendment 07-CPA-05 designated a new LAMIRD without observing applicable GMA requirements. A comprehensive plan amendment must "conform to [the GMA]." RCW 36.70A.130(1)(d). But "the GMA is not to be liberally construed." *Woods*, 162 Wn.2d at 612 & n.8, 614 (citing *Skagit Surveyors & Eng'rs, LLC v. Friends of Skagit County*, 135 Wn.2d 542, 565, 958 P.2d 962 (1998)). Thus, a comprehensive plan must obey the GMA's clear mandates. *See Thurston County v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 164 Wn.2d 329, 341-42, 190 P.3d 38 (2008). A newly adopted or amended development regulation must be "consistent with and implement the comprehensive plan." RCW 36.70A.040(3)(d), (4)(d), (5)(d); RCW 36.70A.130(1)(d); *see* WAC 365-196-805(1). But "a comprehensive plan is a 'guide' or 'blueprint' to be used when making land use decisions." *Citizens for Mount Vernon v. City of Mount Vernon*, 133 Wn.2d 861, 873, 947 P.2d 1208 (1997) (quoting *Barrie v.*

15

*Kitsap County*, 93 Wn.2d 843, 849, 613 P.2d 1148 (1980)). Thus, a development regulation need not strictly adhere but must "generally conform" to the comprehensive plan. *Id.* (quoting *Barrie*, 93 Wn.2d at 849).

A county's comprehensive plan must contain "a rural element including lands that are not designated for urban growth." RCW 36.70A.070(5); *see* WAC 365-196-425. This rural element "may allow for limited areas of more intensive rural development, including necessary public facilities and public services." RCW 36.70A.070(5)(d); *see* WAC 365-196-425(6). A county must "minimize and contain the existing areas or uses of more intensive rural development" by adopting measures providing they "shall not extend beyond the[ir] logical outer boundary . . . , thereby allowing a new pattern of low-density sprawl." RCW 36.70A.070(5)(d)(iv); *see* WAC 365-196-425(6)(c)(i)(B)-(E). Existing areas "are clearly identifiable and contained [within] . . . a logical boundary delineated predominately by the built environment." RCW 36.70A.070(5)(d)(iv); WAC 365-196-425(6)(c)(i)(C). In fixing a LAMIRD's logical outer boundary, the county must address "the need to preserve the character of existing natural neighborhoods and communities," "physical boundaries, such as . . . streets and highways, and land forms and contours," and "the prevention of abnormally irregular boundaries." RCW 36.70A.070(5)(d)(iv)(A)-(C); *see* WAC 365-196-425(6)(c)(i)(D)(I)-(III).

Consistent with these rules, the County's rural element allows for LAMIRDs in Policy RL.5.2:

> The intensification and infill of commercial . . . areas shall be allowed in
> rural areas consistent with the following guidelines:

16

> a) The area is clearly identified and contained by logical boundaries, outside of which development shall not occur. These areas shall be designated and mapped within the Limited Rural Development category of the Comprehensive Plan map.
> b) The character of neighborhoods and communities is maintained.
> . . . .
> d) The intensification is limited to expansion of existing uses or infill or new uses within the designated area. . . .

SPOKANE COUNTY COMPREHENSIVE PLAN (SCCP): RURAL LAND USE Policy RL.5.2(a)-(b), (d). The County designed this policy to advance Goal RL.5a: "Provide for . . . commercial uses in rural areas that serve the needs of rural residents and are consistent with maintaining rural character." SCCP: RURAL LAND USE Goal RL.5a.

Here, the hearings board decided the comprehensive plan amendment did not conform to RCW 36.70A.070(5)(d)(iv)(A) through (C), while the concurrent rezone was not consistent with and did not implement Goal RL.5a or Policy RL.5.2(a) through (b) and (d). The County raises four arguments in opposition.

First, the County argues the hearings board erroneously found amendment 07-CPA-05 noncompliant with the GMA because it is based on the pre-amendment comprehensive plan and development regulations, which complied with the GMA. However, an amendment's GMA compliance is independent from that of a pre-amendment planning document. *See* RCW 36.70A.040(3)(d), (4)(d), (5)(d); RCW 36.70A.070; RCW 36.70A.130(1)(d). Notably, the hearings board found amendment 07-CPA-05 failed to minimize and contain the intensification and infill of commercial use within the logical outer boundary the comprehensive plan originally fixed in 2001. This finding is a verity on appeal because the County did not assign error to it. *See* RAP

17

No. 30725-5-III
*Spokane County v. E. Wash. Growth Mgmt. Hr'gs Bd.*

10.3(g)-(h); *Hilltop Terrace Homeowner's Ass'n v. Island County*, 126 Wn.2d 22, 30,

891 P.2d 29 (1995). Indeed, a staff report to the county commissioners supports this

finding, stating,

> The requested change from Urban Reserve to Limited Development Area (Commercial) is generally not consistent with Policy RL.5.2 [and, thus, the GMA].
>
> The Limited Development Area . . . Commercial was designated south of Day Mt Spokane Road and adjacent to both side [sic] of Highway 2 based on existing land uses, zones, comprehensive planning policies and the public process that resulted in the adoption of the original GMA County Comprehensive Plan in November of 2001. If approved the Limited Development Area Commercial would be extended to the north side of Day Mt. Spokane Road and to property which is not fronting or adjacent to Limited Development Areas with actual frontage of Highway 2.

AR at 553. Accordingly, the County's argument fails.

Second, the County argues the hearings board erroneously interpreted Goal

RL.5a and Policy RL.5.2 as requiring public necessity for McGlades's market and bistro

because the GMA does not require such need and the comprehensive plan is a mere

guide. But the GMA provides LAMIRDs may contain "necessary public facilities and

public services." RCW 36.70A.070(5)(d). And, amendment 07-CPA-05 would not

generally conform to the comprehensive plan if it provided commercial uses in rural

areas regardless of local need. The County cannot escape its obligation to observe

Goal RL.5a and Policy RL.5.2 by characterizing them as a mere guide.

Third, the County argues the hearings board erroneously found no demonstrated

public necessity for McGlades's market and bistro, considering the full-service

restaurants existing nearby, because the community gave widespread support for the

18

business. But desires are different than needs. The County does not identify any evidence demonstrating public need. Instead, the County suggests public desire is enough because the GMA offers flexibility, ensuring community-oriented planning responsive to local circumstances. We do not reweigh the evidence. Even if we disagreed with the hearings board, it is a verity that amendment 07-CPA-05 established an improper outer LAMIRD boundary.

Finally, the County argues the hearings board erroneously found McGlades's market and bistro disrupted the neighborhood's rural character because the business assimilated well in an increasingly urban area. But the County does not dispute the hearings board's assessment of increased traffic, noise, and lighting. Again, we do not reweigh the evidence. And again, even if we disagreed with the hearings board, it is a verity that amendment 07-CPA-05 established an improper outer LAMIRD boundary.

In sum, the record shows the comprehensive plan amendment does not conform to the GMA, while the concurrent rezone is not consistent with and does not implement the comprehensive plan. A sufficient quantity of evidence exists to persuade a fair-minded person the County did not comply with the GMA in adopting amendment 07-CPA-05. In reaching this decision, the hearings board correctly interpreted and applied the law upon thorough reasoning with due consideration for the facts. Therefore, the hearings board did not err in finding GMA noncompliance.

We turn now to SEPA noncompliance. The County challenges the hearings board's decision that the environmental checklist was inadequate under SEPA because it did not fully disclose or carefully consider amendment 07-CPA-05's probable long-

19

term effects. Under SEPA, a county must include an environmental impact statement with any proposal the lead agency's responsible official decides would "significantly affect[] the quality of the environment." RCW 43.21C.030(2)(c); WAC 197-11-330(1). An agency must make this threshold determination where, as here, the proposal is an "action"[3] and is not "categorically exempt."[4] Former WAC 197-11-310(1) (2003). The agency must use an environmental checklist to assist its analysis and must document its conclusion in a determination of significance or nonsignificance. Former WAC 197-11-315(1) (1995); WAC 197-11-340(1), -360(1).

The agency must base its threshold determination on "information reasonably sufficient to evaluate the environmental impact of a proposal." WAC 197-11-335. In GMA planning, the agency should tailor the "scope and level of detail of environmental review" to fit the proposal's specifics. WAC 197-11-228(2)(a). Thus, for a nonproject action, such as a comprehensive plan amendment or rezone, the agency must address the probable impacts of any future project action the proposal would allow. WASH. STATE DEP'T OF ECOLOGY, *supra*, § 4.1, at 66; *see* WAC 197-11-060(4)(c)-(d). The purpose of these rules is to ensure an agency fully discloses and carefully considers a proposal's environmental impacts before adopting it and "at the earliest possible stage."

---

[3] *See* WAC 197-11-704(2)(b)(ii). Specifically, amendment 07-CPA-05 is a nonproject action because it involves "[t]he adoption or amendment of comprehensive land use plans or zoning ordinances." *Id.*

[4] *See* RCW 43.21C.229, .450; WAC 197-11-305, -800; SPOKANE COUNTY CODE 11.10.070-.075, .180. Additionally, while a county may forego SEPA analysis if its comprehensive plan and development regulations "provide adequate analysis of and mitigation for the specific adverse environmental impacts of the project action," this exception does not apply to amendment 07-CPA-05 because it is a nonproject action. RCW 43.21C.240(1); *see also* RCW 43.21C.240(2); WAC 197-11-158.

No. 30725-5-III
*Spokane County v. E. Wash. Growth Mgmt. Hr'gs Bd.*

*King County v. Wash. State Boundary Review Bd.*, 122 Wn.2d 648, 663-64, 666, 860 P.2d 1024 (1993); *see* WAC 197-11-060(4)(c)-(d). An agency may not postpone environmental analysis to a later implementation stage if the proposal would affect the environment without subsequent implementing action. RICHARD L. SETTLE, THE WASHINGTON STATE ENVIRONMENTAL POLICY ACT § 13.01[1], at 13-15 to -16 (1987 & Supp. 2010); *see* WAC 197-11-060(5)(d)(i)-(ii).

Here, the hearings board found the County's checklist ignored the probable impacts of any future commercial development amendment 07-CPA-05 would allow and improperly postponed environmental analysis to the project review stage. The County raises two arguments in opposition.

First, the County argues the hearings board contradicted its later statement that future commercial development is speculative given the property's existing growth. This claimed inconsistency makes no difference because McGlades clearly intended to reopen and expand its market and bistro under the proposal.[5] And, the proposal would allow McGlades or its successors to replace the business with a variety of other commercial uses.[6] Either result could significantly affect environmental quality, as

_____

[5] McGlades's application for a conditional use permit requested expansion to include an asphalt driveway and drive-through espresso service, asphalt parking lot with spaces for 39 vehicles, outdoor dining and entertainment with seating for 64 patrons, and on-site alcohol consumption. The hearing examiner noted this expansion "is likely if the site is rezoned." AR at 178. The hearing examiner clarified, "McGlades . . . seeks to reopen the business, and to expand it under the [Limited Development Area (Commercial)] zone." AR at 172.

[6] The Limited Development Area (Commercial) zone designation allows taverns and pubs, theaters and performing arts centers, circuses, storage facilities, business complexes, financial institutions, vehicle repair shops, mortuary service centers, medical

21

discussed below. Regardless, the hearings board properly recognized the checklist could not postpone environmental analysis to the project review stage because amendment 07-CPA-05 approved the property's existing nonconforming use, thereby affecting the environment even if McGlades or its successors never pursue subsequent project action.

Second, the County argues the hearings board undervalued the checklist's thorough contents. But the checklist failed to adequately address the proposal. Apart from reciting it in a background section with seven other comprehensive plan amendments and concurrent rezones, the checklist did not mention amendment 07-CPA-05. Assuming this omission was a scrivener's error, the checklist still lacked required particularity. Though amendment 07-CPA-05 varied greatly from the other seven proposals, the checklist attempted to address them all with broad generalizations. The checklist did not tailor its scope or level of detail to address the probable impacts on, for example, water quality, resulting from amendment 07-CPA-05 specifically. While the property is near potable water wells in a Critical Aquifer Recharge Area with high susceptibility, the proposal could "allow an on-site [wastewater disposal] system that will fail thus resulting in the degradation of the local environment." AR at 562. Despite these concerns, the checklist repeated formulaic language postponing environmental analysis to the project review stage and assuming compliance with applicable standards. Thus, the checklist lacked information reasonably sufficient to evaluate the proposal's environmental impacts.

---

service centers, and scientific research facilities. SPOKANE COUNTY ZONING CODE

In sum, the record shows the County failed to fully disclose or carefully consider amendment 07-CPA-05's environmental impacts before adopting it and at the earliest possible stage. This is a sufficient quantity of evidence to persuade a fair-minded person the County did not comply with SEPA in adopting the proposal. In reaching this decision, the hearings board correctly interpreted and applied the law upon thorough reasoning with due consideration for the facts. Therefore, the hearings board did not err in finding SEPA noncompliance.

We turn now to invalidity based on GMA and SEPA noncompliance. The County challenges the hearings board's determination that amendment 07-CPA-05 is invalid because its continued validity would substantially interfere with fulfilling the GMA's environmental protection goal. To fulfill this goal, the GMA requires a county to designate critical areas and adopt development regulations protecting them. RCW 36.70A.060(2), .070(5)(c)(iv), .170(1)(d); WAC 365-196-485(2), (3)(a), (c)-(d). Critical areas include "areas with a critical recharging effect on aquifers used for potable water." RCW 36.70A.030(5)(b); WAC 365-196-200(5)(b). A county must use "the best available science in developing policies and development regulations to protect the functions and values of critical areas." RCW 36.70A.172(1); WAC 365-196-485(1)(b), (3)(d).

Here, the hearings board found by failing to comply with SEPA in adopting amendment 07-CPA-05, the County threatened a Critical Aquifer Recharge Area with high susceptibility and disused the best available science for mitigating probable environmental impacts. This, the hearings board concluded, substantially interfered

14.612.220.

23

with fulfilling the GMA's environmental protection goal. The County argues the hearings board ignored the permit review McGlades's market and bistro underwent at each expansion in the years preceding the comprehensive plan amendment and concurrent rezone. But the County failed to adopt any such environmental analysis, incorporate it by reference, or include it by addendum. *See* WAC 197-11-600, -625 to -635. The mere existence of additional supporting documents cannot excuse the County's failure to include them in the planning process.

The record shows the County's SEPA noncompliance threatened a Critical Aquifer Recharge Area with high susceptibility and disused the best available science for mitigating probable environmental impacts. This is a sufficient quantity of evidence to persuade a fair-minded person amendment 07-CPA-05's continued validity would substantially interfere with fulfilling the GMA's environmental protection goal. In reaching this decision, the hearings board correctly interpreted and applied the law upon thorough reasoning with due consideration for the facts. Therefore, the hearings board did not err in determining invalidity on SEPA grounds.

Moreover, we note the hearings board additionally determined invalidity on GMA grounds, specifying that amendment 07-CPA-05's continued validity would substantially interfere with fulfilling the GMA's urban growth promotion and sprawl reduction goals. The County vaguely assigned error to this determination then abandoned the error claim by failing to argue it. *See* RAP 10.3(a)(6), (g)-(h); *Howell v. Spokane & Inland Empire Blood Bank*, 117 Wn.2d 619, 624, 818 P.2d 1056 (1991). Thus, the hearings board did not err in determining invalidity on GMA grounds.

24

Considering all, the hearings board's decision is supported by substantial evidence in light of the whole record, does not erroneously interpret or apply the law, and is not arbitrary or capricious. *See* RCW 34.05.570(3)(d)-(e), (i). Therefore, we conclude the hearings board did not err by invalidating amendment 07-CPA-05.

## D. Deference

The issue is whether the hearings board erred by failing to accord the County's planning actions proper deference. The County contends the hearings board engaged in an unlawful procedure or decision-making process, or failed to follow a prescribed procedure, by withholding such deference. We review the hearings board's procedures and decision-making processes de novo. RCW 34.05.570(3)(c); *Kittitas County*, 172 Wn.2d at 155.

A hearings board must defer to a county's planning action if it is consistent with the GMA's goals and requirements. Former RCW 36.70A.3201 (1997); *Quadrant Corp.*, 154 Wn.2d at 238. GMA deference to county planning actions supersedes APA deference to administrative adjudications. *Quadrant Corp.*, 154 Wn.2d at 238. Thus, we will not defer to a hearings board if it fails to accord a county the required deference. *Id.* But a hearings board accords a county the required deference by properly applying the GMA's clearly erroneous review standard. *Id.*

Here, the hearings board initially presumed the County's comprehensive plan amendment and concurrent rezone were valid but ultimately found them clearly erroneous in light of the entire record and the GMA's goals and requirements. Again, the hearings board's decision is supported by substantial evidence in light of the whole

25

record, does not erroneously interpret or apply the law, and is not arbitrary or capricious. Thus, the hearings board properly applied the GMA's clearly erroneous review standard. *See* RCW 36.70A.320(1), (3); *King County*, 142 Wn.2d at 552. By doing so, the hearings board accorded the County's planning actions the required deference. *See Quadrant Corp.*, 154 Wn.2d at 238. In sum, the hearings board did not engage in an unlawful procedure or decision-making process, or fail to follow a prescribed procedure. *See* RCW 34.05.570(3)(c).

## E. Attorney Fees and Costs

The Neighbors request an award of attorney fees and costs, citing chapter 4.84 RCW. The Regulatory Reform Act, RCW 4.84.370, does not authorize an award because it does not apply to the County's comprehensive plan amendment or concurrent rezone, and the Neighbors did not prevail before the county commissioners or hearing examiner. *See Heller Bldg., LLC v. City of Bellevue*, 147 Wn. App. 46, 64, 194 P.3d 264 (2008); *Tugwell v. Kittitas County*, 90 Wn. App. 1, 15, 951 P.2d 272 (1997). Likewise, the Equal Access to Justice Act, RCW 4.84.340 through .360, does not authorize an award because it does not apply against the hearings board. *See Duwamish Valley Neighborhood Pres. Coal. v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 97 Wn. App. 98, 100-01, 982 P.2d 668 (1999). Therefore, we deny the Neighbors' request.

No. 30725-5-III
*Spokane County v. E. Wash. Growth Mgmt. Hr'gs Bd.*

Affirmed.

_____
Brown, J.

WE CONCUR:

_____
Kulik, J.

_____
Siddoway, A.C.J.