IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| IBAQ MOHAMED, | No. 77885-4-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, | |
| Respondent. | FILED: March 4, 2019 |

CHUN, J. — Ibaq Mohamed appeals from a superior court ruling upholding a Board of Appeals decision that she physically abused H.J.,[1] a vulnerable adult. Mohamed contends that the Board of Appeals review judge improperly prejudged the case based on the superior court's prior entry of a protection order against her. However, the Board of Appeals review judge followed the superior court's mandate on remand and deliberately reviewed the evidence without considering the protection order. And substantial evidence in the record supports the finding of abuse. We affirm.

BACKGROUND

In January 2014, 79-year old H.J. visited her primary care physician. Based on concerns about H.J.'s level of stress and her living situation, H.J.'s doctor referred her to Dr. Anya Zimberoff, who is a doctor of clinical psychology

---

[1] We use the vulnerable adult's initials, H.J., to protect her privacy.

and a mental health treatment provider. H.J. visited Dr. Zimberoff the same day, accompanied by her granddaughter. H.J. speaks Somali and she communicated with Dr. Zimberoff through her granddaughter.

H.J. was living in an apartment and required in-home assistance for daily tasks. H.J.'s grandson, Gasle,[2] had agreed to provide care in exchange for housing. For this reason, H.J. included him on her Section 8 housing application. Gasle was involved in a relationship with Ibaq Mohamed and they had a child together.[3]

H.J. reported to Dr. Zimberoff that she was increasingly "stressed out" by the behavior and demands of her grandson and Mohamed. H.J. described several incidents that distressed her. For instance, about 10 months earlier when the couple argued, H.J. tried to intervene, and Mohamed hit H.J. forcefully in the chest and caused her to fall to the ground. H.J. said that on another occasion, Mohamed threatened her with physical violence and told her she might lose her subsidized housing and end up homeless. According to Dr. Zimberoff, H.J. appeared to be "anguished" over the situation because she wanted to protect her family, but at the same time, she felt afraid and betrayed. Dr. Zimberoff reported her concerns about abuse of a vulnerable adult to Adult Protective Services (APS), a division of the Department of Social and Health Services (the Department).

---

[2] Because he shares a last name with H.J., we refer to Gasle by his first name to protect the victim's privacy.

[3] Gasle and Mohamed were married in a religious ceremony, but not legally married.

APS social worker Marleen Aguon investigated the report. In the course of her investigation, Aguon interviewed H.J. with the assistance of a Somali interpreter. She also interviewed Dr. Zimberoff, H.J.'s granddaughter, H.J.'s neighbor, and Mohamed. She attempted to interview Gasle, but was unable to reach him. H.J. told Aguon about the incident when Mohamed hit her and caused her to fall. H.J. reported that the police responded and arrested Mohamed as a result of the incident and that medics took her to the hospital. She told Aguon that she experienced pain for several days afterward. H.J. described another incident when Mohamed yelled at her and blamed her for causing an argument between her and Gasle. H.J. described a third incident when Mohamed yelled at her about the Section 8 housing application, threatened to make a false accusation against her, and told her she would "suffer the consequences of being homeless." H.J. said she felt "terrorized" in her own home.

H.J. told Aguon that she had taken some steps to protect herself, including changing the locks, and asking another relative to stay with her at night in case Mohamed and Gasle returned. H.J.'s neighbor corroborated some details of her allegations.

Aguon also reviewed a police report describing the domestic violence incident involving Gasle, Mohamed, and H.J. According to the report, around midnight on March 21, 2013, Gasle called 911, claiming that Mohamed assaulted both him and his mother. Before police officers arrived, Mohamed called 911

3

herself. Mohamed said that, in fact, Gasle assaulted her and then told his grandmother to "fake an injury."

When police officers arrived at the apartment, they first spoke to Mohamed. Mohamed said she was seven weeks pregnant, she came to H.J.'s apartment to give Gasle a ride, and he slapped her in the face and then tried to kick her down the stairs. Gasle informed the officers that Mohamed was upset because he was not answering her telephone calls. He said that Mohamed came to the apartment, and when he answered the front door, she struck him in the face, causing a cut to his lip. Gasle revealed a fresh cut on his upper lip that was bleeding slightly. Gasle said that H.J. tried to separate him and Mohamed, and Mohamed struck his grandmother, who fell to the ground. Police officers were unable to communicate with H.J., but observed her on the floor of the apartment, asking for "Allah."

Because only Gasle had a visible injury, the officers determined that Mohamed was the primary aggressor and arrested her. Once Gasle understood that the officers intended to arrest Mohamed, he objected and refused to provide a written statement or allow the officers to photograph his injury. Emergency medical personnel arrived and took H.J. to the hospital for treatment.

In April 2014, at H.J.'s request, Aguon filed a petition for a Vulnerable Adult Protection Order (VAPO) on her behalf. H.J. dictated a declaration to a Somali interpreter, and Aguon submitted it to the court in support of the protection order. In her declaration, H.J. said Mohamed hit her "really hard" and then she went to the hospital in an ambulance. After a hearing in April 2014, the

4

court entered a VAPO. It expired three years later in April 2017. In issuing the VAPO, the superior court found that Mohamed committed "acts of abandonment, abuse, neglect, and/or financial exploitation" of a vulnerable adult. The court further found that Mohamed represented a "credible threat" to H.J.'s physical safety.

After completing its investigation, APS determined that Mohamed physically and mentally abused a vulnerable adult. See RCW 74.34.020(2)(b), (c). The Department informed Mohamed of its decision and of her right to request an administrative hearing. When she received the Department's letter, Mohamed learned that her name would be placed on a state registry that would preclude her from employment involving the care of vulnerable adults or children. Mohamed requested a hearing before an Administrative Law Judge (ALJ).

The Department moved to dismiss Mohamed's hearing request, arguing that the matter of abuse was previously resolved in 2014, when the superior court entered a VAPO restraining Mohamed and the doctrine of collateral estoppel barred relitigation. The ALJ denied the motion. Because the VAPO did not include specific findings setting forth the facts that served as a basis for the court's order, the ALJ could not conclude that the issues in the two cases were identical.

Several witnesses testified at the two-day hearing before the ALJ, including Dr. Zimberoff, Aguon, a police officer, and Mohamed. According to Mohamed, on the day of the 2013 domestic violence incident, Gasle repeatedly

5

called and harassed her. Eventually, he apologized. But later, when she arrived at H.J.'s apartment to pick him up, he accused her of infidelity and they continued to fight. After Mohamed threatened to sell his television and use the proceeds to pay her rent, Gasle slapped her on the face. Gasle then went into the apartment and Mohamed followed because she wanted an apology. When H.J. answered the door, Mohamed told her that Gasle struck her. When Mohamed indicated that she was going to call the police, Gasle, afraid of going to jail, told his grandmother, "We have to say she came to our house, she hit me, she hit you, throw yourself on the floor." H.J. proceeded to throw herself on the floor, pretended to be injured, and yelled at Mohamed for hitting her.

According to Mohamed, police officers told her "'[s]omebody has to go to jail tonight,'" and they decided to arrest her because Gasle sustained a cut. Mohamed speculated that Gasle might have bitten himself with his "long teeth." Mohamed also said she did not challenge the 2014 protection order because she did not want to see H.J. and felt threatened by her.

In addition to her testimony, Mohamed presented Gasle's July 2014 declaration in her defense. In the declaration, Gasle stated that Mohamed did not perpetrate "any kind of abuse" toward his grandmother and specifically, did not hit or push her. Gasle explained that although he initially told police officers that Mohamed slapped him, he was "confused" because they had been arguing.

The ALJ issued an initial order, reversing the Department's findings of physical and mental abuse. The Department petitioned for review to the Board of Appeals (BOA). In its review decision and final order, a BOA review judge

6

reversed the ALJ's initial order and reinstated the Department's findings of abuse.

Mohamed filed a petition for judicial review and the superior court granted the petition in part. The court remanded the case to the BOA to apply the standard of willfulness consistent with a decision issued by Division Three of this court after the BOA review judge decided the appeal. See Crosswhite v. Dep't of Soc. & Health Servs., 197 Wn. App. 539, 389 P.3d 731, review denied, 188 Wn.2d 1009, 394 P.3d 1016 (2017) (redefining the standard willfulness as set forth in former WAC 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).[4]

On remand, a different BOA review judge entered a 58-page review decision and final order, again affirming the Department's findings of abuse. In particular, applying the standard of willfulness the court articulated in Crosswhite, the review judge determined that Mohamed committed physical abuse when she struck H.J.

> Based on a review of the entire evidentiary record, it must be concluded that the Department has proven by a preponderance of the evidence that the Appellant did intentionally and with willful action strike H.J. in the chest, causing her to fall to the ground and to experience pain for several days later. There is no evidence that the Appellant's actions were unintentional or were mere accidents. Again, the Appellant knew, [sic] that her actions would cause some form of harm and injury to H.J.

---

[4] In Crosswhite, the court held that the phrase "knew or should have known" as set forth in the definition of willful under former WAC 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 impermissibly treated knowledge as negligence and the phrase "negative outcome" was beyond the scope of abuse as defined by RCW 74.34.020. Crosswhite, 197 Wn. App. at 555-58. The current regulation does not include a definition of willfulness.

Mohamed petitioned for judicial review and the superior court denied the petition as to the finding of physical abuse, but granted the petition as to the finding of mental abuse. Mohamed appeals.

ANALYSIS

Mohamed raises two primary arguments on appeal. First, she contends that this court should disregard the BOA's findings and its conclusion of physical abuse because the review judge believed that a finding of no abuse would impermissibly conflict with the superior court's prior entry of a VAPO. Second, she argues that the evidence in the record is insufficient to support the determination of abuse. [5]

Washington's Administrative Procedure Act (WAPA), chapter 34.05 RCW governs Mohamed's appeal of a final agency order. Crosswhite, 197 Wn. App. at 547. When reviewing agency action, this court "sits in the same position as the superior court, applying the standards of the WAPA directly to the record before the agency." Tapper v. Emp't Sec. Dep't, 122 Wn.2d 397, 402, 858 P.2d 494 (1993); Goldsmith v. Dep't of Soc. & Health Servs., 169 Wn. App. 573, 584, 280 P.3d 1173 (2012). Appellate review is of the BOA's decision, not the decision of the superior court. Buechel v. Dep't of Ecology, 125 Wn.2d 196, 202, 884 P.2d 910 (1994). A court may grant relief from an administrative decision only if the party challenging the decision shows: (1) the agency erroneously interpreted or applied the law; (2) the decision is not based on substantial evidence; or (3) the

---

[5] Mohamed assigned error to more than 50 findings of fact and conclusions of law. However, because her briefing fails to address any findings with specificity, we deem these assignments abandoned. See Kadoranian v. Bellingham Police Dep't, 119 Wn.2d 178, 191, 829 P.2d 1061 (1992) (an assignment of error that is "neither argued nor briefed" is waived).

decision is arbitrary or capricious. RCW 34.05.570(3); Tapper, 122 Wn.2d at 402; Premera v. Kreidler, 133 Wn. App. 23, 31, 131 P.3d 930 (2006).

When a party asserts that an agency's decision is not supported by substantial evidence, we review the entire record to determine whether sufficient evidence exists to persuade a fair-minded person of the truth or correctness of the order. Port of Seattle v. Pollution Control Hr'gs Bd., 151 Wn.2d 568, 588, 90 P.3d 659 (2004); Spokane County v. E. Wash. Growth Mgmt. Hr'gs Bd., 176 Wn. App. 555, 565, 309 P.3d 673 (2013). We view the evidence in the light most favorable to the party who prevailed in the highest forum that exercised fact-finding authority. Spokane County, 176 Wn. App. at 565. This court defers to the BOA's determination of the credibility of witnesses and weight of evidence. Spokane County, 176 Wn. App. at 565.

In the review decision and final order, the review judge raised concerns about an administrative proceeding that could theoretically reach a result in direct conflict with an existing superior court order. Based on this discussion, Mohamed contends that the BOA review judge was unable to objectively review the record.

However, regardless of the merits of the concern about the supremacy of the superior court as a forum, the review judge deliberately and explicitly set aside that issue and reviewed the sufficiency of the evidence in the record without regard to the VAPO:

> The undersigned recognizes that that the Department had made a pre-hearing motion for dismissal of the Appellant's hearing request based on the existence of the VAPO, a motion that was denied and

not appealed to the BOA prior to the merits hearing being held. The Department did raise the collateral effect of the VAPO in the petition for review of the Initial Order. The undersigned also realizes that the Superior Court has remanded this case to the BOA for another review under the recent *Crosswhite* decision without addressing the effect of the existing VAPO in the order of remand. It is for this later [sic] reason, the undersigned has decided the case without consideration of, and prior to addressing, the VAPO in this decision. However, for ongoing jurisdictional concerns, the issue still must be addressed in this decision. The appellate courts will eventually have to address this issue in either this case on judicial review or in some other case in the future.

Accordingly, before discussing the implication of the VAPO, the review judge carefully considered and weighed the evidence, made over 100 factual findings, and entered conclusions. The BOA's findings and conclusions of abuse do not rest, in whole or in part, on the prior entry of the VAPO. The review judge followed the superior court's order on remand and reviewed the evidence in light of the analysis in Crosswhite. The Board's comments anticipate a future case in which findings entered in the context of an administrative proceeding could be susceptible to challenge in the face of a contrary superior court order. But this is not such a case. We decline Mohamed's invitation to reverse the BOA's review decision and final order based on nothing more than speculation.

There are several aspects of Mohamed's challenge to the sufficiency of the evidence supporting the BOA's finding of physical abuse. She claims that the BOA improperly relied solely on hearsay evidence and failed to properly accord deference to the ALJ's factual determinations.

The WAPA expressly provides that hearsay evidence is admissible in administrative proceedings if "in the judgment of the presiding officer it is the kind of evidence on which reasonably prudent persons are accustomed to rely in the

10

conduct of their affairs." RCW 34.05.452(1). "Findings may be based on such evidence even if it would be inadmissible in a civil trial." RCW 34.05.461(4). The only limitation on findings of fact based on hearsay evidence is that the opposing party must have an opportunity to confront the evidence and rebut it. RCW 34.05.461(4).

Also, under the WAPA, the review judge has the same decision-making authority in entering the final order that the ALJ had while presiding over the hearing and entering the initial order. RCW 34.05.464(4). This is subject to the proviso that the review judge must give "due regard" to the ALJ's "opportunity to observe the witnesses." RCW 34.05.464(4). Where the ALJ and the review officer enter contradictory findings, we do not accord the deference to the ALJ that we would accord to the trier of fact in a nonadministrative matter, because the review officer has broad decision-making authority and is intended to bring the agency's expertise to bear. Crosswhite, 197 Wn. App. at 548.

Mohamed largely ignores the BOA's extensive analysis of both of these issues. She does not acknowledge the BOA's determination that H.J.'s statements to Dr. Zimberoff were made for the purpose of medical treatment and therefore exempt from the hearsay rule. The review judge explained in detail the factors he considered in assessing the reliability of each item of hearsay evidence and specifically determined that the Department's records and police reports are "reasonably relied upon by prudent persons in the conduct of their affairs." And the record demonstrates that Mohamed had the opportunity to challenge the evidence. Mohamed, who was represented by counsel, had the

opportunity to cross examine the witnesses, testify to her own version of the events, call witnesses, and present evidence. She does not dispute that the Department provided its proposed exhibits to her before the hearing, which included H.J's declaration and the Department's records. No authority supports Mohamed's position that the Department was required to present H.J.'s live testimony.

The BOA review judge also carefully considered the ALJ's opportunity to observe the witnesses. But as the review judge noted, the ALJ made no credibility determination that depended on an assessment of a witness's demeanor. Rather, the ALJ credited Mohamed's testimony because she was the only witness with "first-hand knowledge" of the incidents. The BOA review judge found that in order to credit Mohamed's account, he would have to accept a number of implausible facts. Namely, if Mohamed's account is true, then it also would have to be true that H.J. participated in a dramatic scheme to mislead the police, allowed herself to be taken to the hospital to treat a fake injury, and then perpetuated the falsehood many months later, when it was no longer necessary to protect her grandson.

Mohamed also claims that the BOA review judge failed to consider evidence that was favorable to her. And she offers a number of reasons why the review judge should have discredited the evidence supporting the Department's position. But the review judge's comprehensive review decision and final order took into account the entire record, including those facts favorable to Mohamed.

And as explained, we defer to the BOA on issues of credibility and persuasiveness of the evidence. See Spokane County, 176 Wn. App. at 565.

Taking into account the BOA's role as fact finder in assessing the persuasiveness and credibility of the evidence presented below, we conclude that substantial evidence in the record supports its finding that Mohamed engaged in physical abuse. We affirm the BOA's final order.

_____Chun, J._____

WE CONCUR:

_____Mann, ACJ._____          _____D.____, J._____

FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON
2019 MAR -4 AM 11:04