# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SCHNITZER WEST, LLC, a Washington limited liability company, | No. 47900-1-II |
| Respondent, | |
| v. | |
| CITY OF PUYALLUP, a Washington municipal corporation, | PUBLISHED OPINION |
| Appellant, | |
| and | |
| NEIL ARTHUR VAN LIEROP, an individual, and VAN LIEROP INVESTMENT COMPANY, INC., a Washington company, and VAN LIEROP BULB FARMS, INC., a Washington company, | |
| Additional Parties. | |

JOHANSON, J. — The City of Puyallup (City) appeals from a superior court order declaring its "Ordinance No. 3067" (the Ordinance) invalid under the Land Use Petition Act (LUPA), chapter 36.70C RCW. Schnitzer West LLC filed a LUPA petition challenging the Ordinance in superior court, claiming that the Ordinance was an invalid land use decision. The City argues that the superior court lacked subject matter jurisdiction because the Ordinance is a legislative action, not a land use decision subject to LUPA review.

We hold that the Ordinance was not a "site-specific" land use decision because it did not result from an application by a specific party, and therefore the superior court lacked subject matter jurisdiction under LUPA. Accordingly, we reverse the superior court order declaring the Ordinance invalid and dismiss Schnitzer's LUPA petition.

FACTS

I. BACKGROUND

This case involves a series of decisions by the Puyallup City Council concerning an area where Schnitzer had purchased commercial property and sought to develop that property (Schnitzer Property).[1] In 2009, the City formally adopted an amendment to its comprehensive plan that created the "Shaw-East Pioneer Overlay Zone" (SPO).[2] The Shaw Road/East Pioneer Street area is considered a symbolic "'gateway'" to the City. Clerk's Papers (CP) at 205. The City wanted to create additional performance standards to supplement the existing zoning standards to encourage quality development in that area while allowing flexibility and creativity, create a walkable, safe, and pedestrian-friendly community, and use low-impact development principles. An "overlay zone" such as the SPO establishes additional development criteria to supplement the base zoning standards already in existence in a given area or per underlying zoning district. CP at 103.

---

[1] Also known as the Van Lierop property.

[2] Shaw Road/East Pioneer Street is a reference to an intersection in the vicinity. The annexation area mentioned below refers to property to the north of the intersection. Certain property to the south of the intersection was within city limits, and the SPO had already been extended to those parcels.

The SPO was codified in chapter 20.46 of the Puyallup Municipal Code (PMC). At the time of its adoption, the SPO did not apply to Schnitzer's property because the City had yet to annex it. The City, however, intended to expand the SPO into commercially zoned parcels within the area after it was annexed. Chapter 20.46 PMC imposes various regulations that are intended to promote creative, flexible, and quality development, ensure safe and pedestrian-oriented streetscapes, and encourage the use of low-impact development within the SPO. Annexation of the Schnitzer Property occurred in 2012, but the City did not extend the SPO into the area at that time.

In 2013, following its purchase of the Schnitzer Property within the newly annexed area, Schnitzer requested—and the City approved—an amendment to the then-existing zoning designation to convert a portion of its property from "Business Park" to "Limited Manufacturing" (ML) zoning to allow this portion to be zoned consistently with an adjacent part. CP at 319. Schnitzer's development plans included a 470,000-square-foot warehouse. The City approved Schnitzer's rezone request, finding that if it did not do so, an industrial development on the property would not be economically viable. Following this action, Schnitzer owned a total of three parcels in the annexation area, each with the ML zoning designation. Presumably, its development proposal was viable under this arrangement.

In January 2014, following the election of two new city council members, the City held a hearing to discuss whether or not it should impose an emergency development moratorium on all parcels within the recently annexed area, including the Schnitzer Property.[3] The stated purpose of the moratorium was to provide the City with sufficient time to consider whether to extend the SPO into all zones within the annexation area. But in Schnitzer's view, the City had ulterior motives. Schnitzer believed that, in reality, the proposed moratorium was a retaliatory measure designed to frustrate its development proposal.

After a second hearing, the City enacted an ordinance imposing the moratorium on all parcels within the annexation area for a 120-day period. In April 2014, the planning commission reviewed the potential SPO expansion, and it determined that there was no basis to extend the SPO into any portion of the annexation area, including the Schnitzer Property. The following month, after its review of the planning commission's recommendations, the City discussed the possibility of extending the SPO to only the Schnitzer Property—those parcels zoned ML.

The City indicated that it would not consider applying the SPO as it had previously been written and applied to commercially-zoned properties, but it considered the possibility of either extending an amended version of the SPO to the Schnitzer Property or not extending the SPO to its property at all. In furtherance of the former option, the City prepared draft code text amendments to chapter 20.46 PMC, noting that a corresponding zoning map amendment would

---

[3] There were a total of 13 parcels in the annexation area of which Schnitzer owned 3. Only the Schnitzer Property had an ML zoning designation while the others had various commercial zoning designations. As mentioned below, the City initially proposed an SPO expansion that would apply to all 13 parcels, but after multiple hearings and a comprehensive study by the planning commission, the city council voted to expand the SPO only to properties zoned ML, each of which Schnitzer owned.

accompany any modified SPO if applied to the ML zone. The City recognized that although the plan it contemplated would involve differing and generally stricter design standards such as "consistent landscaped perimeter treatment and a maximum building size," the overall type and scope of allowable uses in the proposed scenario would be "fairly similar."[4] CP at 160. According to the City, this new option for extending the SPO would not fundamentally change the projected range of land uses permissible under the existing zoning regulations.

The City drafted the Ordinance to reflect its intent to expand this amended SPO into Schnitzer's ML-zoned property. The SPO extension was a divisive issue in the City. From the first proposal of the Ordinance to its enactment there was both considerable support and opposition. Proponents of the Ordinance were concerned about the importance of the area and the need for careful and thoughtful development. Meanwhile, opponents believed that existing development standards were adequate and that an SPO extension would operate as an undue burden to development in the area.

On May 28, 2014, the City adopted the Ordinance. The Ordinance imposed a variety of new design standards and development regulations. It contained a building size limitation of 125,000 square feet, a size drastically smaller than Schnitzer's planned 470,000-square-foot warehouse. Concurrently with the Ordinance's adoption, the City also added a new section to chapter 20.46 PMC to reflect the SPO's expansion into the ML-zoned properties.

---

[4] The parties appear to disagree as to the extent that the Ordinance affects proposed uses of the property. The City frequently remarks that the Ordinance consisted largely of "design standards," but Schnitzer contends that the Ordinance fundamentally altered the type and scope of permissible uses on the land. In support of this contention, it seems that Schnitzer relies almost entirely on the building size limitation because the City is correct insofar as the rest of the Ordinance relates largely to aesthetics such as streetscape appearance and landscaping regulations.

## II. PROCEDURE

Shortly after the City enacted the Ordinance, Schnitzer challenged its validity by filing a LUPA petition in the superior court. In Schnitzer's view, the City enacted the Ordinance under the guise of legislative action, ignoring procedures for quasi-judicial, site-specific actions under the city code and state law. Schnitzer also contended that the City singled out and unfairly targeted it because the City's constituents disfavored the proposed project.

The City moved to dismiss the petition for lack of subject matter jurisdiction because the Ordinance was not a "'land use decision'" subject to review under LUPA. CP at 280. The superior court denied the motion. The superior court then ruled that the Ordinance was an unlawful site-specific rezone and that the Ordinance was invalid as a matter of law. The City appeals.

## ANALYSIS

The City argues that the superior court lacked jurisdiction to review the validity of the Ordinance under LUPA because the Ordinance was not a "'land use decision.'" Br. of Appellant at 12, 15. We agree.

### A. STANDARD OF REVIEW AND LAND USE DECISION

Whether a court has subject matter jurisdiction for a LUPA petition is a question of law that we review de novo. *Durland v. San Juan County*, 182 Wn.2d 55, 64, 340 P.3d 191 (2014). LUPA grants the superior court exclusive jurisdiction to review a local jurisdiction's land use decisions with the exception of decisions subject to review by bodies such as the Growth Management Hearings Board. RCW 36.70C.030(1)(a)(ii). The legislature's purpose in enacting LUPA was to "establish[ ] uniform, expedited appeal procedures and uniform criteria for

6

reviewing [land use] decisions [by local jurisdictions], in order to provide consistent, predictable, and timely judicial review." RCW 36.70C.010.

A "'[l]and use decision'" is

a final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals, on:

(a) *An application for a project permit* or other governmental approval required by law before real property may be improved, developed, modified, sold, transferred, or used, but excluding applications for . . . legislative approvals such as area-wide rezones and annexations; and excluding applications for business licenses.

RCW 36.70C.020(2) (emphasis added).

"*Project permit" or "project permit application*" means any land use or environmental permit or license required from a local government for a project action, including but not limited to building permits, subdivisions, binding site plans, planned unit developments, conditional uses, shoreline substantial development permits, site plan review, permits or approvals required by critical area ordinances, site-specific rezones authorized by a comprehensive plan or subarea plan, but excluding the adoption or amendment of a comprehensive plan, subarea plan, or development regulations except as otherwise specifically included in this subsection.

RCW 36.70B.020(4) (emphasis added).

### B. SITE-SPECIFIC REZONES

Our Supreme Court has held that site-specific rezones are "project permit[s]" and are thus land use decisions under LUPA subject to the superior court's exclusive jurisdiction. *Woods v. Kittitas County*, 162 Wn.2d 597, 610, 174 P.3d 25 (2007). "[A] site-specific rezone is a change in the zone designation of a 'specific tract' at the request of 'specific parties.'" *Spokane County v. E. Wash. Growth Mgmt. Hr'gs Bd.*, 176 Wn. App. 555, 570, 309 P.3d 673 (2013) (internal quotation marks omitted) (quoting *Woods*, 162 Wn.2d at 611 n.7), *review denied*, 179 Wn.2d 1015 (2014). A site-specific rezone is *not* a project permit approval under LUPA when the rezone is

approved concurrently with a comprehensive plan amendment because the statute requires that a site-specific rezone be authorized by the "then-existing" comprehensive plan to constitute a land use decision. *Spokane County*, 176 Wn. App. at 571.

### C. SITE-SPECIFIC REZONE REQUESTED BY A SPECIFIC PARTY

Here, the crux of the parties' dispute is whether the Ordinance extending the SPO to Schnitzer's ML-zoned property was a "site-specific" rezone and thus should be considered a land use decision subject to superior court review under LUPA. The City argues that its decision to extend the SPO cannot be considered a site-specific rezone because it was initiated by the City in its legislative capacity and no "specific party" applied for or otherwise requested a rezone. Br. of Appellant at 21. We agree.[5]

To demonstrate that the Ordinance here effectuated a site-specific rezone, the evidence must show (1) that there was a change in zone designation (2) of a specific tract and (3) that specific tract's zoning designation change was requested by a "'specific party.'" *Spokane County*, 176 Wn. App. at 570 (internal quotation marks omitted) (quoting *Woods*, 162 Wn.2d at 611 n.7).

RCW 36.70C.020(2)(a) defines a land use decision as a final determination on "[a]n *application* for a project permit or other governmental approval." (Emphasis added.) Under RCW 36.70B.020(4), project permit means a permit required from a local government. But a public agency does not apply for a permit to itself nor does it apply for approval of its own action. Read together, these two statutes require an application from someone other than the public entity. Here, no specific party applied for a change in the zoning classification of the Schnitzer Property.

---

[5] Because we reverse the superior court on this ground, we do not reach the City's remaining arguments.

Instead, out of concern for the special character of the SPO "gateway" area, the City initiated procedures to consider extending the SPO. Schnitzer has cited no authority that a City's decision to amend existing zoning ordinances constitutes a "change in the zone designation . . . at the request of 'specific parties.'" *Spokane County*, 176 Wn. App. at 570 (internal quotation marks omitted) (quoting *Woods*, 162 Wn.2d at 611 n.7).

Schnitzer relies on cases where courts have determined that site-specific rezones occurred. For instance in *Woods*, our Supreme Court was asked whether the superior court had jurisdiction to decide whether a site-specific land use decision complied with the Growth Management Act, chapter 36.70A RCW. 162 Wn.2d at 603. In *Woods*, Kittitas County had been asked by a third party to rezone an area zoned "forest and range" into one that permitted much smaller lot sizes to provide areas for low density residential development. 162 Wn.2d at 603-04.

Schnitzer also cites *Kittitas County v. Kittitas County Conservation Coalition*, where the issue was whether the superior court or the Growth Management Hearings Board had subject matter jurisdiction to review a rezone request made in conjunction with a proposed comprehensive plan amendment. 176 Wn. App. 38, 45, 308 P.3d 745 (2013). Division Three of this court held that a site-specific rezone that is not authorized by a then-existing comprehensive plan is subject to review by the Growth Management Hearings Board. *Kittitas County*, 176 Wn. App. at 52. Schnitzer rightfully acknowledges that *Kittitas County* is distinguishable from the present case because the Ordinance here was not enacted concurrently with a comprehensive plan amendment nor a request for such an amendment.

In *Spokane County*, Division Three held that superior courts do not have exclusive jurisdiction under LUPA when a site-specific rezone request to change a zoning designation is

made simultaneously with a request for an amendment to a comprehensive plan. 176 Wn. App. at 562. There, the comprehensive plan amendment was necessary because a business owner engaged in a nonconforming use. *Spokane County*, 176 Wn. App. at 562-63.

Schnitzer is correct that the rezone was authorized by its then-existing comprehensive plan. In fact, the recitals contained in the Ordinance itself state that the extension of the SPO was consistent with the City's comprehensive plan. Significantly, however, Schnitzer fails to reconcile one aspect that is universally true in each case it cites, but is not true here.

In each case on which Schnitzer relies, the site-specific rezone (or what would have been considered a site-specific rezone if permitted by the respective comprehensive plans) was requested by a specific party and either approved or denied by the local government entity involved. In *Woods*, an entity that owned a large amount of property applied for the change in that property's zoning classification. 162 Wn.2d at 603-04. In *Kittitas County*, a property development company applied for the change in zoning designation. 176 Wn. App. at 45. And in *Spokane County*, a business owner seeking to expand its operations and to remedy the business's nonconforming use was the party who applied for the zoning designation changes. 176 Wn. App. at 562-63.

To establish that the City should be viewed as a specific party applying for a rezone request, Schnitzer relies on a single reference within the PMC that says that applications to initiate consideration of matters under the zoning code can be initiated by the city council. PMC 20.11.005. But Schnitzer does not point to any document in the record purporting to be the "application" by the City to initiate consideration of matters under its own zoning code. Schnitzer

does not explain how the City's Ordinance nevertheless constitutes a specific request or application by a specific party for a rezone.

For the foregoing reasons, we hold that the City's Ordinance does not constitute a site-specific rezone and, therefore, it is not a land use decision subject to the superior court's jurisdiction.

### D. CONCLUSION

We reverse the superior court's order declaring the Ordinance invalid and granting relief under LUPA in favor of Schnitzer and remand to dismiss Schnitzer's LUPA petition for lack of subject matter jurisdiction.

JOHANSON, J.

I concur:

MAXA, J.

11

BJORGEN, C.J. (dissenting) — At issue in this appeal is whether Ordinance 3067 is the sort of site-specific rezone that must be challenged in superior court under the Land Use Petition Act (LUPA), chapter 36.70C RCW; or whether it is in the nature of a comprehensive plan amendment or the sort of development regulation that must be challenged through the Growth Management Hearings Board under the Growth Management Act (GMA), chapter 36.70A RCW. Because I believe it is of the former type, I dissent.

Ordinance 3067, adopted in 2014, extended an amended version of the Shaw-East Pioneer Overlay Zone (SPO) onto three contiguous parcels of land, owned by Schnitzer West LLC, totaling approximately 22 acres. The Schnitzer parcels were part of a larger area annexed into the City of Puyallup in 2012. The City intended to extend the SPO onto all 13 commercially-zoned parcels within the annexed area, but only reached the Schnitzer parcels through this 2014 ordinance. Before Ordinance 3067 was adopted, Schnitzer had requested, and the City approved, a rezone of this property from "Business Park" to "Limited Manufacturing" (ML) zoning. The City subsequently considered a development moratorium on the area that had been annexed, including the Schnitzer property, and Schnitzer filed a short subdivision application for a 470,000 square foot warehouse on its property before the City could adopt the moratorium. The City then adopted Ordinance 3067, which, among other features, imposed a building size limitation of 125,000 square feet, drastically smaller than Schnitzer's planned 470,000 square foot warehouse.

In sum, Ordinance 3067 rezoned only a 22-acre portion of the annexation area, consisting of Schnitzer's three parcels on which it had already submitted a subdivision application for a

specific development proposal. The effect of the rezone was to make Schnitzer's specific warehouse proposal illegal.

The central statutory provisions governing whether Ordinance 3067 may be challenged under LUPA are RCW 36.70C.020(1) and RCW 36.70B.020(4). As pertinent, RCW 36.70C.020(2)(a) specifies that a "land use decision" subject to LUPA is a determination by a local jurisdiction on an "application for a project permit or other governmental approval required by law before real property may be . . . developed . . . but excluding applications for legislative approvals such as area-wide rezones." RCW 36.70B.020(4), in turn, states that a project permit includes, among other matters, "site-specific rezones authorized by a comprehensive plan or subarea plan, but excluding the adoption or amendment of a comprehensive plan, subarea plan, or development regulations except as otherwise specifically included in this subsection."

*Woods v. Kittitas County*, 162 Wn.2d 597, 610, 174 P.3d 25 (2007), made the effect of these provisions clear:

> GMHBs do not have jurisdiction to decide challenges to site-specific land use decisions because site-specific land use decisions do not qualify as comprehensive plans or development regulations. Former RCW 36.70A.030(7); RCW 36.70B.020(4); *Wenatchee Sportsmen*, 141 Wn.2d at 179, 4 P.3d 123. A challenge to a site-specific land use decision should be brought in a LUPA petition at superior court. *Wenatchee Sportsmen*, 141 Wn.2d at 179 n.1, 4 P.3d 123.

Every element of the extension of the SPO to the Schnitzer parcels speaks to its site-specific nature. It is not a text amendment applicable throughout a zoning district. *Cf. Raynes v. City of Leavenworth*, 118 Wn.2d 237, 821 P.2d 1204 (1992). It neither involves nor requires a comprehensive plan amendment. *Cf. Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 179, 4 P.3d 123 (2000); *Spokane County v. E. Washington Growth Mgmt. Hrg's Bd.*, 176 Wn. App. 555, 571-72, 309 P.3d 673 (2013), *review denied*, 179 Wn.2d 1015 (2014). To the

13

contrary, the ordinance itself states that "[t]his ordinance would be supported by policies with the Comprehensive Plan Community Character Element" and then lists those policies in detail. Clerk's Papers at 205-06.

In addition, the ordinance only affects three parcels totaling around 22 acres in size, far below the nearly 40-acre commercial planned unit development deemed quasi-judicial in *Citizens for Mount Vernon v. City of Mount Vernon*, 133 Wn.2d 861, 874-75, 947 P.2d 1208 (1997). In doing so, the ordinance carves these three parcels away from similarly situated ones. First, the ordinance stated that the city council intended to extend the SPO into the annexation area upon annexation. The ordinance, however, only affected the three Schnitzer parcels, leaving the rest of the annexation area untouched. Second, although the city zoning map shows land zoned ML in the immediate vicinity, the three Schnitzer parcels were the only ML-zoned land affected by Ordinance 3067. These distinctions do not necessarily signal any substantive legal flaws in the ordinance. They do, however, help show the ordinance's relentless spotlight on the Schnitzer site.

Context, also, is telling. As noted, Schnitzer filed a subdivision application for a 470,000 square foot warehouse on the property before the adoption of Ordinance 3067. The ordinance made that impossible. Thus, both the scope and purpose of extending the SPO onto Schnitzer's three parcels shows that it was not an adoption of legislative or area-wide policy, but rather a rezone of a specific, relatively small property in the context of a development proposal on that property. Even if this is entirely legal and in the public interest, it is unmistakably site-specific.

14

The majority holds, though, that the ordinance is not subject to LUPA, because the zoning change it made was not requested by a "specific party," but rather was initiated by the City. This conclusion rests on the following statement in *Spokane County*, 176 Wn. App. at 570:

> The rezone was certainly site specific. *See Woods*, 162 Wn.2d at 611 n.7, 174 P.3d 25 (stating a site-specific rezone is a change in the zone designation of a "'specific tract'" at the request of "'specific parties'") (quoting *Cathcart-Maltby-Clearview Cmty. Council v. Snohomish County,* 96 Wn.2d 201, 212, 634 P.2d 853 (1981)). But the parties dispute whether the rezone was or needed to be "authorized by a comprehensive plan." RCW 36.70B.020(4).[2]

This statement, however, should not be taken as a holding that a rezone initiated by local government can never be subject to LUPA.

First, whether a rezone must be initiated by a party other than the local government to be deemed "site-specific" was neither disputed nor analysed in the *Spokane County* decision. Instead, the court examined whether the rezone was authorized by a then-existing comprehensive plan or whether it was premised on and carried out an amendment to the plan. *Id.* at 571-72. In addition, the rezone was proposed by the applicant, not by the City, so the status of a City-proposed rezone was not at issue. For these reasons, the requirement of "specific parties" in *Spokane County* is dicta at best.

The authority on which *Spokane County* relies, *Woods*, 162 Wn.2d at 611 n.7, is appended to *Woods'* description of the holding in *Wenatchee Sportsmen*: that a challenge to a rezone under LUPA is limited to its compliance with zoning requirements or urban growth area restrictions, not the GMA itself. *See Woods*, 162 Wn.2d at 611. Thus, *Woods* cannot be taken as authority for a rule that a rezone initiated by local government can never be subject to LUPA.

In the absence of analysis and the presence of dicta drawing on further dicta, neither *Woods* nor *Spokane County* can be taken as authority that a rezone initiated by a local

government can never be deemed site-specific under LUPA. To the contrary, an express holding

of *Spokane County* suggests the opposite:

> we hold a site-specific rezone is a project permit approval under LUPA if it is authorized by a then-existing comprehensive plan and, by contrast, is an amendment to a development regulation under the GMA if it implements a comprehensive plan amendment.

*Spokane County*, 176 Wn. App. at 572. Ordinance 3067 made clear that its rezone was authorized

by the existing comprehensive plan and did not implement any amendment to that plan. As shown,

this rezone was site-specific in purpose and effect. Thus, under this holding of *Spokane County*,

it may be challenged under LUPA.

Finally, the purpose of the distinction between site-specific and legislative actions

counsels that Ordinance 3067 is subject to review under LUPA. Our Supreme Court has

cautioned against overreliance on writ of certiorari case law in interpreting LUPA. *Chelan*

*County v. Nykreim*, 146 Wn.2d 904, 930, 52 P.3d 1 (2002). Nonetheless, it seems transparent

that the fault line between site-specific approvals that may be challenged under LUPA and

legislative approvals that go to the Growth Management Hearings Board runs parallel to the

divide before LUPA between adjudicatory or quasi-judicial decisions subject to the writ and

legislative decisions that are not. *See, e.g.*, *Westside Hilltop Survival Comm. v. King County*, 96

Wn.2d 171, 634 P.2d 862 (1981); *Parkridge v. City of Seattle*, 89 Wn.2d 454, 573 P.2d 359

(1978); and *Raynes*, *supra*.

Our Supreme Court has recognized that

> [d]etermining that an action is legislative or adjudicatory is more than a matter of semantics; different consequences follow such a determination. Legislative action is far more impervious to review than is adjudication. The "arbitrary or capricious" standard which legislative actions must meet is not nearly as stringent or exacting and is difficult to prove. Adjudicatory functions must also

16

meet the "clearly erroneous" or "substantial evidence" tests, as well as negotiate the due process hurdles of "notice", "hearing", and the "appearance of fairness".

*Westside Hilltop*, 96 Wn.2d at 176. Similarly, in *Parkridge,* 89 Wn.2d at 460, the court noted that

[i]n a rezone action, adjudicatory in nature, the required relationship to the public interest is not to be presumed as it would be in an original comprehensive zoning action by the city council, which we have held to be legislative in nature.

These distinctions, in a word, recognize that adjudicatory or site-specific actions by their nature merit a more searching review than do legislative ones. The more an action resembles the work of a court, the more it involves specific parties and a specific tract, *Cathcart-Maltby-Clearview Community Council v. Snohomish County*, 96 Wn.2d 201, 212, 634 P.2d 853 (1981), and the more it involves application of existing law to the facts rather than a response to changing conditions through the enactment of a general law of prospective application, *Raynes*, 118 Wn.2d at 244-45; then the more it calls for the scrutiny given adjudications, rather than the deference given legislation.

Whether a rezone is proposed by a property owner, a neighbor or the local government has little to do with these distinctions. If, as here, the rezone is confined to a specific tract, is not an implementation of a comprehensive plan amendment, is not a text amendment applicable generally to a zoning district, involves the application of existing law to fact, and is made in the context of a specific development proposal, it is adjudicatory and merits the type of review reserved for administrative adjudications.

Similarly, we should not conclude that by using the term "application" in RCW 36.70C.020(1) the legislature intended to abandon these distinctions for measures proposed by a governmental entity. Such a conclusion would sacrifice long-standing case law designed to

ensure the proper type of review on the doubtful basis of a single term capable of a range of meanings. This doubt is underlined by *Spokane County*'s use of "request," not "application" in its description set out above of a site-specific rezone. 176 Wn. App. at 570.

Ordinance 3067 should be subject to the type of review reserved for adjudications. That review is afforded by the standards of LUPA, not by those of the Growth Management Review Board.

For these reasons, the superior court correctly denied the City's motion to dismiss based on its claim that the ordinance was not a "land use decision" subject to review under LUPA. We should proceed to the merits of the City's appeal of the superior court's decision.

Bjorgen, C.J.

Bjorgen, C.J.