# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

CLARK COUNTY,

     Appellant,

     v.

WESTERN WASHINGTON GROWTH
MANAGEMENT HEARINGS BOARD;
and FRIENDS OF CLARK COUNTY,

     Respondents,

GRANITE CONSTRUCTION
COMPANY; and BRP MINERALS LLC,

     Appellants.

No. 86622-2-I

DIVISION ONE

UNPUBLISHED OPINION

BIRK, J. — Under the State Environmental Policy Act (SEPA), chapter 43.21C RCW, Clark County (County) issued a determination of nonsignificance (DNS) in connection with an application to amend the County's comprehensive plan to add a surface mining overlay (SMO) designation to four parcels. The County later approved the amendment by Ordinance 2022-07-01(B) (the Ordinance). Friends of Clark County (FoCC), a nonprofit corporation, challenged the DNS and the Ordinance, arguing the SMO designation would have significant environmental consequences that the County failed to recognize and evaluate. The Western Washington Growth Management Hearings Board (Board) determined the County had failed to comply with SEPA, and the Growth

Management Act (GMA), chapter 36.70A RCW, and invalidated portions of the Ordinance. We affirm the Board's final decision and order.

I

On January 28, 2021, Granite Construction Company applied for a comprehensive plan and zoning amendment to add a SMO designation to four parcels of land in the County's Chelatchie Bluff area, totaling approximately 330 acres of working forest lands. To meet state[1] and county[2] requirements to extend the SMO designation, Granite submitted documentation of the mineral resource potential of the land and the feasibility of mining operations. The documentation showed existing habitat, hypothetical mining excavations that would strip surface lands from the site, and included a transportation impact analysis discussing proposed ways to transport the minerals to offsite locations.

Granite's application included a SEPA environmental checklist. Because Granite applied only to amend the comprehensive plan, and not to establish an actual mine, it indicated in the checklist that the proposed action of amending the plan to add the SMO designation would not have any significant environmental impacts, such as upon erosion, air emissions, surface waters, alteration of drainage patterns, removal of vegetation, contamination, noise, traffic, plants, animals, fish, or marine life, and environmentally sensitive areas, wilderness, rivers, and threatened or endangered species. Rather, any potential impacts

---

[1] Washington law requires counties to classify mineral resource lands "based on geologic, environmental, and economic factors, existing land uses, and land ownership," as detailed in the administrative code. WAC 365-190-070(3)(a).
[2] The County's comprehensive plan accordingly seeks to classify and protect mineral resource lands.

would be addressed with the future development or use proposal. The checklist acknowledged the intent that the SMO designation "will be followed by an application for a mining permit."

The County's responsible official determined that the proposed designation was a nonproject action and made a threshold DNS, indicating no adverse environmental issues were implicated. As a result, no environmental impact statement (EIS) was prepared. The County adopted the designation by the Ordinance on July 19, 2022.

FoCC sought review with the Board. FoCC argued that for purposes of the SEPA checklist and threshold determination, the County was required to review the environmental impacts not merely of the SMO designation itself, but also potential future mining operations to the extent hypothesized in the application. Granite and BRP Minerals LLC[3] sought leave, and were allowed, to intervene in the matter.

The Board found that the application "clearly demonstrate[d] that the nature and scope of the planned mining activity that the SMO overlay was to facilitate was known to a high level of detail." The Board concluded that "given the high level of detail that was available at the time the application for the SMO was made, 'the principal features of a proposal and its environmental impacts' could be reasonably identified and it was clear error for the County to defer a more detailed analysis of environmental impacts to the project application stage." The Board found that the

---

[3] BRP Minerals LLC owns the mineral rights for the 330 acre property subject to the SMO designation.

3

Ordinance "places at risk 330 acres of environmentally sensitive lands by authorizing mineral extraction without an adequate analysis and consideration of the potential adverse environmental impacts of this action." The Board concluded that the continued validity of the Ordinance substantially interfered with goal 10 of the GMA, the protection of the natural environment, RCW 36.70A.020(10), and invalidated the Ordinance.

The County sought review of the Board's final decision and order in superior court. BRP and Granite also sought review. The superior court consolidated the petitions, and certified the petitions for direct review in this court. See RCW 34.05.518.

II

We review a hearings board decision under the Administrative Procedure Act (APA), chapter 34.05 RCW. Feil v. E. Wash. Growth Mgmt. Hr'gs Bd., 172 Wn.2d 367, 376, 259 P.3d 227 (2011). We look at the record before the Board and review the Board's legal conclusions de novo. City of Redmond v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd., 136 Wn.2d 38, 45-46, 959 P.2d 1091 (1998). The burden is on the party asserting the error to demonstrate that the Board erroneously interpreted or applied the law, or that the order is not supported by substantial evidence. RCW 34.05.570(1)(a); King County v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd., 142 Wn.2d 543, 553, 14 P.3d 133 (2000). We review the Board's order for substantial evidence, meaning a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order. Thurston

County v. W. Wash. Growth Mgmt. Hr'gs Bd., 164 Wn.2d 329, 341, 190 P.3d 38 (2008).

"[C]omprehensive plans and development regulations, and amendments thereto, adopted under [the GMA] are presumed valid upon adoption." RCW 36.70A.320(1). However, this presumption can be rebutted where the Board finds evidence of a clear error based on the requirements of the GMA. RCW 36.70A.320(3). An action is " 'clearly erroneous' " if the Board is " 'left with the firm and definite conviction that a mistake has been committed.' " Cent. Puget Sound, 142 Wn.2d at 552 (quoting Dep't of Ecology v. Pub. Util. Dist. No. 1, 121 Wn.2d 179, 201, 849 P.2d 646 (1993), aff'd, 511 U.S. 700, 114 S. Ct. 1900, 128 L. Ed. 2d 716 (1994)). The deference afforded to county planning actions supersedes deference granted by the APA, so long as the county planning action meets and is consistent with the goals and requirements of the GMA. Quadrant Corp. v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd., 154 Wn.2d 224, 238, 110 P.3d 1132 (2005). Where a board acknowledged it was applying the deferential standard of review in its ruling, and the facts do not show the board failed to apply the standard of review correctly, the board decision is entitled to deference when challenged. King County v. Friends of Sammamish Valley, 3 Wn.3d 793, 803, 556 P.3d 132 (2024).

The Appellants assert that the Board failed to afford the County the required deference regarding its threshold determination. However, the Board stated that it was applying the deferential standard of review in its final decision. Thus, the Board's decision is entitled to deference unless substantial evidence does not show that the County's threshold determination is clearly erroneous.

5

III

The Appellants argue that the Board erroneously interpreted and applied the SEPA timing rules in WAC 197-11-055(1) and (2), which state that the SEPA process shall be integrated "at the earliest possible time," -055(1), and that the threshold determination shall be prepared "when the principal features of a proposal and its environmental impacts can be reasonably identified," -055(2). We disagree.

SEPA requires the preparation of an EIS on any proposal or action "having a probable significant, adverse environmental impact." RCW 43.21C.031(1); see WAC 197-11-300(2). "Probable" is not a strict statistical probability test, but instead means "likely or reasonably likely to occur, as in 'a reasonable probability of more than a moderate effect on the quality of the environment' (see WAC 197-11-794)." WAC 197-11-782. An EIS shall be prepared "at the earliest possible point in the planning and decision-making process," WAC 197-11-055(2), and "early enough so it can serve practically as an important contribution to the decision making process and will not be used to rationalize or justify decisions already made," WAC 197-11-406.

Washington case law is clear that an EIS is required if, based on the totality of the circumstances, future development is probable following an action and if that development will have a significant adverse effect upon the environment. In Friends of Sammamish Valley, the court reaffirmed that a county must look toward anticipated future projects when conducting an environmental review to determine any likely environmental impacts. 3 Wn.3d at 821. Where the county had issued

a DNS, id. at 799, the court held the county failed to consider the potential environmental impacts of a zoning amendment, and improperly deferred environmental review to the individual project action stage, id. at 818. The Supreme Court upheld the board's finding that the SEPA checklist improperly "failed to address the full range of probable impacts of the future projects that the Ordinance would allow." Id. at 817-18. The record disclosed "current, specific developments and land use changes that are probable to result from the proposed action." Id. at 821. This was based on the ordinance creating "opportunities" for new businesses to open and existing ones to expand, where, with existing businesses already operating, it was "entirely predictable" that under the ordinance, more would open. Id. at 821-22 & n.22. The court upheld the Board's finding that comprehensive SEPA review was required to evaluate " 'the impact of the change in allowable uses.' " Id. at 822.

In King County. v. Washington State Boundary Review Board, there was "no existing proposal to develop" land sought to be annexed by a municipality, beyond the "preferred use" of " '[s]ingle family residential' " and alternately a golf course community. 122 Wn.2d 648, 656, 860 P.2d 1024 (1993). The court held that "a proposed land-use related action is not insulated from full environmental review simply because there are no existing specific proposals to develop the land in question or because there are no immediate land-use changes which will flow from the proposed action." Id. at 664. An EIS is "required if, based on the totality of the circumstances, future development is probable following the action and if that development will have a significant adverse effect upon the environment." Id.

at 663. When there are uncertainties in future development plans, these only "limit the scope of an EIS to 'the level of detail appropriate to the scope of the nonproject proposal.' " Id. at 664 n.10 (quoting WAC 197-11-442(2)). "Most important[]" to the Supreme Court's analysis was the checklists indicating "an intent" to develop the properties. Id. at 665. The Supreme Court held, with no proposals more concrete than " '[s]ingle family residential' " or alternately a golf course community, it was clear that either would have "major impact" on such things as water quality, wetlands, and wildlife habitat. Id. The court rejected the argument that a DNS was proper because consideration of the environmental effects would have been premature and speculative. Id. at 658, 667.

This court held similarly that future development had to be considered at the threshold determination in Spokane County v. Eastern Washington Growth Management Hearings Board, 176 Wn. App. 555, 581, 309 P.3d 673 (2013), and Lands Council v. Washington State Parks Recreation Commission, 176 Wn. App. 787, 805, 309 P.3d 734 (2013). In Spokane County, a business proposed amendments to the county's comprehensive plan that would change a property's zone designation to commercial. 176 Wn. App. at 563. The county concluded an EIS was not required because the proposal presented no probable significant adverse impact, and left much of the required environmental analysis to be determined if site specific developments were proposed. Id. The court found that the business "clearly intended to reopen and expand its market and bistro under the proposal" and the proposal also would have allowed the business to be replaced with a variety of other commercial uses. Id. at 579-80. The court held

8

that either result "could significantly affect environmental quality," and the hearings board "properly recognized that the checklist could not postpone environmental analysis to the project review stage because [the proposal] approved the property's existing nonconforming use, thereby affecting the environment" even if the business never pursued subsequent project action. Id. at 580. The court affirmed the hearings board's finding of SEPA noncompliance. Id. at 581.

In Lands Council, the state parks and recreation commission classified a 279 acre proposed alpine ski area as recreational without preparing an EIS, and stated the classification option allowed the proposal " 'to develop one lift and seven ski runs' " in the area. 176 Wn. App. at 792. The court held the failure to prepare an EIS at the time of the classification decision violated SEPA, because at the time of the decision, the principal features of expanding the ski area and its environmental impacts could be reasonably identified, and an EIS would have made an important contribution to the decision whether the ski area should have been expanded. Id. at 805. The court rejected the commission's argument that the most rational time for an EIS was after the director's final decision, because the effects of the expansion were already known, including the proposed number of lifts and runs, and the only uncertainty was whether the precise location of them would be adjusted by the director at the final review stage. Id.

Here, Granite noted in its SEPA checklist its undisputed intent to mine the site if the activity is ultimately permitted. This is directly analogous to Boundary Review Board, Spokane County, and Lands Council. The stated intent to mine a specific site is more concrete than the potential future businesses forecast in

Friends of Sammamish Valley, and more concrete than the intended future uses in Boundary Review Board, making the case for SEPA review including consideration of future mining activity more compelling. Where a future project action is known, SEPA requires the agency to address the likely environmental impacts the project would cause, and requires it be addressed at the earliest time possible. At the time the County adopted the Ordinance, the principal features of the SMO designation allowing the site to be mined and its environmental impacts could be reasonably identified, and an EIS would have made an important contribution to the decision. Under WAC 197-11-055 and WAC 197-11-406, an EIS should have been prepared for the decision to add an SMO designation to the parcels. The Board did not erroneously interpret or apply WAC 197-11-055.[4]

In addition to their arguments about the timing of SEPA review, the Appellants assert that as a factual matter the Board's finding that the County had a " 'highly detailed proposal' " is not supported by substantial evidence. In the SEPA context, the critical question is whether there is substantial evidence which supports the Board's conclusion that the County had before it details indicating impacts triggering SEPA review under WAC 197-11-055(2). Here, there was substantially more than a mere possibility that the land in question would be mined following the SMO designation. The environmental checklist submitted by Granite

---

[4] The Appellants argue that any adverse environmental impact was speculative at the time of the amendment, and it is not yet probable mining activity will occur because future permitting will be required. However, "[t]he fact that proposals may require future agency approvals or environmental review shall not preclude current consideration, as long as proposed future activities are specific enough to allow some evaluation of their probable environmental impacts." WAC 197-11-055(2)(a)(i).

indicates its undisputed intent to mine the property. And, it is undeniable that future mining activity would have a potential significant adverse impact on the environment.[5] At oral argument, Granite agreed there was "no doubt" that extracting a commercially useful amount of rock from 300 acres of existing forest land would have an environmental impact. Wash. Ct. of Appeals oral arg., Clark County v. W. Wash. Growth Mgmt. Hr'gs Bd., No. 86622-2-I (Jan. 9, 2025), at 8 min., 2 sec. to 8 min., 17 sec., https://tvw.org/video/division-1-court-of-appeals-2025011216/?eventID=2025011216. Substantial evidence supported the Board's finding that the detail put forward in the application showed the principal features of future mining activity having significant environmental impacts for purposes of SEPA review under Friends of Sammamish Valley and Boundary Review Board.

IV

The Appellants argue the Board erroneously interpreted or applied RCW 36.70A.302(1) when it invalidated the Ordinance. We disagree.

A hearings board may determine that part or all of a comprehensive plan or development regulations are invalid if the board "[m]akes a finding of noncompliance and issues an order of remand," includes in the final order a determination "that the continued validity of part or parts of the plan or regulation

---

[5] The Appellants argue that the Board "relied heavily on the non-project traffic impact analysis, and assumed the posited worst-case scenario would occur." The Board pointed to that aspect of the traffic study, but this was in giving examples of information presented to the County showing reasonable identification of principal features having probable environmental effects. The Board's decision did not rest on a particular amount of anticipated traffic, but rather its conclusion that the range of effects under consideration ran beyond the SMO designation to the mining activities intended.

would substantially interfere with the fulfillment of the goals of" the GMA, and specifies the part or parts of the plan that are determined invalid and the reasons for the invalidity. RCW 36.70A.302(1). The GMA's goals, relevant here, include: "Protect and enhance the environment and enhance the state's high quality of life, including air and water quality, and the availability of water." RCW 36.70A.020(10). If the board determines that a plan or regulation constitutes a "major violation of the GMA, the growth board has the option of determining that the plan or regulation is invalid." Town of Woodway v. Snohomish County, 180 Wn.2d 165, 175, 322 P.3d 1219 (2014), overruled in part on other grounds by Yim v. City of Seattle, 194 Wn.2d 682, 451 P.3d 694 (2019).

Generally, a hearings board may not declare a plan invalid based solely on a violation of SEPA. Heritage Baptist Church v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd., 2 Wn. App. 2d 737, 759, 413 P.3d 590 (2018). Here, the Board's final decision and order noted that noncompliance with SEPA did not automatically equate to frustration of the GMA's environmental goals. The Board invalidated the Ordinance because it found that the Ordinance placed at risk 330 acres of environmentally sensitive lands by authorizing mineral extraction without consideration of the potential adverse environmental impacts, and the property included "geologically hazardous areas, priority and non-priority riparian areas, critical aquifer recharge areas, wetlands, headwaters of anadromous fish bearing waterways and other critical areas, as well as being in the Pacific Flyway."

The Board's supported findings of fact support its conclusion that the DNS was inadequate under SEPA, and that the Ordinance would substantially interfere

with the GMA's goal of protecting the environment. Thus, the Board appropriately invalidated the Ordinance.

V

We conclude the Board afforded the proper deference to the County, the Board did not misapply WAC 197-11-055, and the record supports its conclusion that the County's threshold determination was clearly erroneous. We affirm the Board's final decision and order invalidating the Ordinance.

Birk, J.

WE CONCUR:

Díaz, J.

Bowman, J.